Melissa Dennis, Mary Denny, Daniel Feehan, et al. Ms. Pettit, you may proceed. Thank you, Judge Elrod, and may it please the Court. Timothy Jackson's complaint is replete with assertions about how he was supposedly wronged by, among others, his department chair, college dean, and university provost. But rather than sue any of them, he named his defendants members of the UNT Systems Board of Regents, whom he does not allege participated in any of the supposed unconstitutional conduct. When asked what he wanted the board members to be enjoined from doing, he named several forms of relief, but none of them were available in a federal court under Ex parte Young. Because Professor Jackson sued the wrong defendants in the wrong court for the wrong relief, his complaint should have been dismissed. I have a couple just quick housekeeping matters. There's one graduate student and 17 faculty members, though, in this lawsuit, or you're not talking about them today at all? We are not talking about them today, except to the extent that the claim against those defendants is subject to pendant jurisdiction in the federal courts. If there is no subject matter jurisdiction over the claims about the defendants about which I am speaking, there is no claim to adhere to. So the people that you just said were not sued, they're not part of the 17 faculty members. Those are different faculty members altogether, not the leaders of the school. And there's only eight members of the nine-member Board of Regents. What's the deal that the other person is not in there? I'm not sure, Your Honor. Okay. I'll ask them if I need to. Thank you. Go ahead. Proceed. So to start with, whether viewed from the lens of standing or sovereign immunity, these board members are not the appropriate defendant here, and I'm looking specifically at paragraph 62 of his complaint, where he names three specific acts of retaliation, none of which involve the board. The first was the August 6th commissioning of an ad hoc committee to investigate the incident that led to this lawsuit. That was done by the provost. The second was the November 25th publication of the committee's report, which by definition was done by the committee, none of whom are on the board, Judge Elrod. And the third one is what he described in his complaint as his department chair's acceptance or exclusion of himself from the journal. What he actually appears to be referring to, however, is the subsequent March 2021 acceptance of a recommendation by the committee, which was also done by the provost. But either way, it's not the board. And this court's precedent in Mi Familia Vota and in Howard Camp clearly state that where the alleged unconstitutional activity was by one state defendant and a different state defendant is sued, the ex parte Young analysis ends. It's also dispositive of the standing analysis for largely the same reasons that the en banc court discussed in its first decision in Dave's, namely that the injury is caused by the independent action of a third party, not before the court, here again the provost or the committee. So the district court was wrong to determine otherwise based on its conclusion that the board of regents played a role in the governance of the university. That is the type of position-based claim that ex parte Young itself said was inconsistent because there are lots of state defendants out there and to sue them just because they have a role in enforcing state law is to sue them as a representative of the state. And this claim is about stopping specific unconstitutional conduct, which has not happened here. Does the board have the power to do that, to restrain the alleged ongoing First Amendment violation, assuming it is one, against Professor Jackson? Does the board have the power to, even if it would be unique to use that power? You know, in the Abbott Texas Democratic Party case, I think that's the question about whether you have the enforcement power. That's a trickier question under Texas law than one might think because the board has delegated the authority to manage the day-to-day operations of the university system to the chancellor, who has sub-delegated that, specifically the publication policies, to the university system. So they could reclaim the power? Yeah, so they could reclaim the power. But it's unclear, before changing those rules, whether they could reach down through the delegation to take this individual act. But assuming they do have that power as a matter of state law, that doesn't get them to an Ex parte Young claim for the same reason that the attorney general having the power to enforce what was at issue in the city of Austin against Paxson was insufficient. Namely, enforcement in this court's case law is to compel or to constrain, and merely having the power does nothing to compel or constrain anyone. So as a result, even if the board had the power, it has not indicated that it's likely to do so. So is this an act-omission distinction that you're drawing? So that's certainly a distinction that they've drawn, but here, to the extent that there is an omission, it is because what the board really does is set rules for governance. And so their... I suppose, hypothetically, I realize it's not this case, or I assume it's not this case. The board had stepped in and passed a resolution saying we back what was done in this case by our subordinates. So back the action of the provost or Professor Jackson? All of the above. All the conduct here, we stand with our people. So in that instance, the board would... There might be an issue under state law where the board had that authority, but assuming they do, then there might be the necessary connection, and in that case, they might be subject to suit. But here, that connection is absent, similar to the way that the connection was absent in the city of Austin against Paxson. That suit hypothetically would be allowed. The problem is we don't have that fact here. Yes, Your Honor. In fact, that's very similar to a case that the Texas Supreme Court decided just on Friday, where the board head of UT that time had delegated the power to set degree requirements to universities but retained the ability to revoke the degree. In that particular instance, the board did revoke the degree, so they would have been an appropriate defendant to sue. We lack that connection here, and so that's why these board members are not the correct defendants. Professor Daxson, in his surreply to this Court, back to your act versus omission, says that they were involved because I sent them this letter on July 31st, and so their lack of action following that letter made them involved. How does that apply to this? This is a case challenging particular conduct. Yes. How does that apply when you have a situation, perhaps a more traditional situation, where a plaintiff sues an officer to prevent the enforcement of an unconstitutional state law? So the letter either way doesn't have any effect because, as this Court noted in TDP, citing In re Abbott, a public official's public statements, their own words, doesn't create power, and you certainly do not create power when a letter gets sent to you. And in terms of the conduct, the special connection requirement, I would point you to me, Familia Vota, for pre-enforcement challenges and Haverkamp for post-enforcement challenges, or the conduct challenges. Both instances where one person was the guilty actor and another person is sued, the ex parte Young analysis ends. That is further confirmed if the Court were to look at the specific types of relief. There were a number of instances where Professor Daxson was asked, basically, what do you want the order to look like? And in response, he's made at least five different suggestions, none of which are valid under ex parte Young, which, like in me, Familia Vota, and Richardson, highlights how they're the wrong defendants. In the complaint itself, he asks, and I'm quoting down here, to undo the three prior actions that we've discussed. Now, that's a retrospective relief, and under an FFRF against Abbott, that's not applicable under ex parte Young. We see then in his response to the motion to dismiss on page 504 of the record and in a supplemental brief that he submitted to the district court on page 54 of the record, you can just ask them to enforce their own policies. Well, to the extent that those policies are binding, they're binding as a matter of state law, and under Pennhurst, that's not enforceable under ex parte Young. So we get to what the district court ordered, which is to stop the ongoing block of the journal. Now, that has a number of different problems, the first being, again, there's no connection to the board. The board hasn't done anything to block the journal. The board hasn't done something that Professor Jackson wants to unblock the journal, but that's not a prohibitory injunction. Instead, it's an affirmative one, and under ex parte Young, the only time there can be an affirmative injunction is when there is a nondiscretionary act, a ministerial one, and Jackson has not been able to point to a single duty that is a ministerial duty that could be ordered on the Board of Regents to have this affirmative injunction. What about the idea that they said they're going to eliminate resources provided to the journal, that the administration was going to eliminate resources? So, again, that's the administration at UNT, not the board system, but that, too, is a discretionary act under the Finley case, where there's a subsidizing of speech here, and when the government subsidizes speech, they are allowed to put additional conditions that they would not be able to do ordinarily under regulating speech. Either way, what the board is doing is highly discretionary in that it has delegated the overall authority to manage that process to UNT, or by way of the chancellor. And so the only thing the board could do to fix that would be to go back and, as we were talking about a few minutes ago, change the scope of their delegation, and that is a discretionary act. This court has recognized that there is a fundamental difference between ordering a state actor to not enforce an existing policy and to create a new one. And the latter part is outside the scope of Ex Parte Young. It's not creating a new policy to say that we're not going to give out funds that we had already indicated we were going to give out. So the policy as it currently exists requires periodic review of things like the Center of Shankarian Studies, and so to say that we're not going to review that or we're not going to continue to, we are going to perpetually fund this institution would be a change in policy. It would also be an order that the actual expenditure of funds itself under the Finley line of cases is a discretionary act. I thought it was funds that had already been allocated. No, Your Honor. To the best of my knowledge, it has not. It's only future funds to be allocated later on a different budget? So the budget, that's not clear from the record, and that's a problem for the plaintiff because it's Professor Jackson's duty to show that the court has jurisdiction. But my understanding of how the budget process works is that it's on an academic year basis. Is it your position that they could sue the provost and the dean and the other academic officers, or is there a barrier in state law to that as well? So it is our position they would be the correct defendant. There might not be a correct form of relief, at least in federal court. But as this court noted in Haberkamp on page 666 of that opinion, who the correct defendant is just depends on the form of relief you are seeking, which has been something of a moving target in this case. So... It's only about the journal, or it was kind of vaguely about his position. I'm not clear on that. Can you help? So, Your Honor, I'm a little unclear on that too. Professor Jackson has been a little... His allegations are unclear. What we do know, and Dean Richmond testified to this, is there hasn't been any change other than the journal itself. He had, for example, he was a distinguished research professor before this incident happened. He is still a distinguished research professor. Is he having classes pulled back? Not that I know of, Your Honor. So all the... And he hasn't been prohibited from publishing in other journals by UNT. Now, his second affidavit said that he had been prohibited from, or prevented from publishing in a Yale journal because of this incident, but that's not something UNT can control. Yale doesn't really care what UNT has to say. So the only thing from the UNT perspective is this journal, which the provost decided, in her discretion, should have an independent editor-in-chief in response to this who would then select the board. That is a discretionary choice because it is the managing of a university-associated journal. Dr. Brand, who is the department chair, did say that if Professor Jackson wanted to disassociate that journal from UNT, he would support that decision, but to the best of my knowledge, he has not done so. So what he... That was kind of like, go away and don't call it this, but take your idea somewhere else. Not at all, Your Honor. It was... It seems like that's what that letter said. Don't... That seems like a fine idea, but don't call it this and try to dissociate it from us. Not at all, Your Honor. What it is saying is as long as you want to be associated with UNT and be funded by UNT, you are subject to these conditions. If you do not want to be subject to these conditions, you may take it elsewhere, but it wasn't saying just go away. No, but it basically had said that that would be a fine decision, but also you should change the name of the journal. I don't recall it saying that the name should be... The letter said that specifically, I thought. I don't recall that. I will check while... It was an encouragement, but not a mandatory thing. Correct, Your Honor, but there's no mandate. What is here is just that the provost, in her discretion, concluded that to continue to be associated with UNT, certain conditions needed to be met that is a discretionary decision not made by the board, so the board's not the correct defendant anyway. So the board is not reviewing the matter at all in any context that they're going to lose a major center for classical music and music theory given the fact that they want to be a major music school. So that's not... So Professor Jackson has not shown that that's the case. The only evidence in the record about that point is Dean Richmond's statement during the evidentiary hearing about jurisdiction that says that he was unaware that the board had discussed this issue at all. The board, again, operates at a very high level of governance and sets general policy... The board has never discussed this issue in any of their academic affairs committees or any... It's hard to... Is that factually in the record as sworn testimony? Yes. Well, what is factually in the record is there is a business record affidavit that the district court did not say whether or not he considered that said that there are no records of the board's meetings indicating that they discussed this. Well, that's not the same thing that they... It's not in the minutes, but whether they discussed it or not. So the only thing that we have is that they do not. It was Professor Jackson's duty, burden to establish jurisdiction, and he has not established that they have. That's also not typically what they do. They do not typically micromanage at the level of individual journal decisions. But they could say, we got this problem. Is the dean handling it? It's hurting our reputation. The students are all having, you know, these protests, et cetera. You know, the graduate students, and so they're not dealing with it at that level, and we need to make sure that the dean has an approach for that to try to calm everything down. So as I indicated with Judge Ho, if they had done that, then there might be the necessary connection, but that connection has not been fled here, and so therefore the board are not... under this particular complaint, and I see that I'm out of time. We respectfully request that you reverse. Do you have anything? May it please the court. There are two fatal and insurmountable problems with the Solicitor General's argument. First, sovereign immunity is an affirmative defense. A complaint is not required to anticipate or plead around the elements of an affirmative defense. The Supreme Court so held in Gomez v. Toledo, and the holding of Gomez is as applicable to sovereign immunity as it is to any other affirmative defense. The burden of pleading an affirmative defense rests entirely with the defendant and never with the plaintiff. That remains the case even when the affirmative defense is jurisdictional and even when the plaintiff bears the ultimate burden of proof on that jurisdictional question. Burden of proof and burden of pleading are not the same thing. Our complaint does not need to say anything about sovereign immunity anywhere. We do not need to plead or explain how the named defendants satisfy the some connection test of Ex parte Young. As long as we do not plead ourselves out of court by admitting the elements of an affirmative defense, and as long as we do not file a complaint in which the sovereign immunity obstacle is obvious from the face of the complaint, there is no basis for dismissing the complaint now at this stage of the litigation based on the Solicitor General's accusation that we failed to adequately plead around the Attorney General's sovereign immunity defense. Why isn't it obvious? It's not obvious because we are claiming that there's some connection between the members of the Board and the constitutional violation that is alleged. There's been no discovery taken yet on that question, and it's ultimately, Judge Allred, a question of fact. The Solicitor General and the Attorney General never launched a factual challenge under Rule 12b-1. This is the second insurmountable obstacle that I'm getting to. They did not make a factual 12b motion. They filed a facial 12b-1 motion. They're challenging the allegations of our complaint. They're not asserting yet as a factual matter that subject-matter jurisdiction is lacking. So just to fast-forward, because I want to understand your legal position, if it's proven that there is zero role, that the Board is only focused on high-level issues, which is not crazy in my mind, they've never talked about this, they have no involvement, at that point, would you agree that there's sovereign immunity? Legally, your point is just you're allowed to get there. Yes, I would agree with that. You deserve fact-proceeding. Absolutely. We've had no opportunity yet to take discovery on that. Legally, you agree with the State that the absence of such facts would be fatal to Ex parte Young. Yes, and I also agree with the State that we ultimately bear the burden of proof on that question. But we haven't gotten to that point in this litigation because they didn't file a factual 12b-1 motion. If they had, then the obligation would be on us to come up with factual evidence because it's our burden of proof to show subject matter jurisdiction. They didn't do that. They filed a facial 12b-1 motion, and a motion of that sort is treated the same way as a 12b-6. All the allegations of our complaint are assumed to be true, all ambiguities in the complaint are construed in our favor, and we have no obligation to plead around affirmative defenses at that stage of the litigation. If Your Honors look at the record, pages 414 to 441 have the Attorney General's initial 12b-1 motion that was filed in the district court. And there's nothing in there that launches a factual attack. It's facial. And the appeal that the Solicitor General has taken to this court is likewise an appeal of the district court's ruling on the facial 12b-1 motion. Now, the district court did complicate factors by sua sponte holding an evidentiary hearing, but it's important to note that hearing was limited to one and only one factual question, whether Professor Jackson actually had been banished from the journal or whether university officials simply threatened him or warned him or tried to deter him from working on the journal. That was the only factual question the district court tried to resolve, and the district court did that on its own initiative, not in response to a factual 12b-1 motion that had been filed by the Attorney General in its court. Did either party try to broaden it to talk about the board's role? The hearing. Once the hearing... Well, at the hearing, there was an attempt by the Attorney General to introduce an affidavit, and the district court... We objected to that and said it's hearsay. The district court, to my knowledge, never ruled ultimately on the question of whether those affidavits would be admissible, and he didn't discuss that in his opinion. So it's not clear to us what status that affidavit has. But even if we were to assume the worst from our standpoint and allow that affidavit to be considered into evidence, the most that that affidavit showed was that the board members did not consciously know or consciously attempt to keep Professor Jackson off the journal. Even if one were to accept that, that is not enough to show that there's no connection between the actions of the board members and the constitutional violations, because they still would have had, at least in our view, the power to call off the witch hunt and restrain the provost and the department chair and all the other actors who are involved in this witch hunt... But I thought you earlier conceded that power is not enough. They actually have to have done something. No, I don't concede that, Judge Ho. What I conceded... I don't mean to... I'm sorry. I misunderstood. What I was asking earlier is if it were proven later that there was no role whatsoever, the board did nothing, I thought you had said, and pardon me if I misunderstood, I thought you had said that at that point the defendant should win. I do agree with that. But I understood Your Honor's question when you said no role whatsoever to mean that not only did they not engage in actions, but they also had no power to engage in those actions either, so they could have no role... Okay, I understand. Fair enough. I appreciate the clarification. So you're saying the power is enough. I believe it is. I mean, the attorney general, for example, of Texas, has no power to enforce the criminal laws of our state. So if someone sued the attorney general under Ex parte Young to launch a constitutional challenge to a state criminal law, there is an obvious absence there of a connection on the face of the complaint, and it would be appropriate to dismiss that on Rule 12b-1, on a facial 12b-1 motion. Not so here, because number one, we don't know yet the full facts of the board's role or the board member's power over this situation. But second, more importantly, there's no binding precedent on this point either. So there are many cases the solicitor general cites in his reply brief saying, look at all the number of times that a sovereign immunity defense has been upheld at the pleading stage. But if you look at those cases, Seminole Tribe is one of the ones that's cited. Obvious, they're suing the state of Florida. That's obvious on the face of the complaint. Whole Woman's Health against Jackson. They're suing a state court judge. Ex parte Young specifically said you can't do that. Again, the defect was obvious on the face of the complaint. And that's true for all affirmative defenses. If I said in a complaint, 500 years ago the defendant stole my watch and I'm suing him for damages, right, there's an obvious statute of limitations problem on the face of the complaint, and the court can dismiss under 12b-6 without waiting for the defendant's answer. With sovereign immunity, it's a waivable affirmative defense. We do not have to plead around that. It's the defendant's responsibility to raise that first. And only when the defendant raises sovereign immunity do we have an obligation to address it. When we file our initial complaint, there's no obligation to say anything whatsoever about ex parte Young, about how we satisfy the sum connection test, or anything else the Solicitor General is talking about in the brief. Twombly and Iqbal have no relevance here because we're talking about an affirmative defense. Now, on the issue of Article III's standing, it's different. We do have to plead the elements of Article III's standing. At least we have to allege them in the complaint. But here, too, we're at the motion to dismiss stage, and the Attorney General filed a facial motion under 12b-1. So our burden is very light. If there's enough in our complaint that would allow a court to infer that there's a causal relationship between the conduct of the named defendants that we sued and the injury that we allege, that's enough for Article III's standing at this stage. We only need to allege, not prove. We don't need detailed factual allegations. Twombly and Iqbal say that repeatedly. Detailed factual allegations are not required. And we've done more than enough. We've explained the injury. He can't work on his journal. It was proven at the evidentiary hearing that the district court held that he's not able to publish in his journal. That alone is enough for injury in fact. And the allegations of our complaint, where we attach to the complaint a letter that Professor Jackson sent to the chair of the Board of Regents, shows the causal connection, because Professor Jackson asked the Board of Regents to call off the witch hunt, and they didn't do it. Shifting gears, could you have sued the more directly relevant players, the subordinates, if I forget their names? Yeah, absolutely, we could have sued them. So why not? We will do that on remand, Judge Ho. I think when we initially filed this lawsuit, we wanted to seek relief that would prevent the university from moving the witch hunt from the provost and the department chair to other people. We viewed this as a university-wide problem. The provost was acting in the name of the university. The department chair was acting in the name of the university. This ad hoc committee was acting in the name of the university. It was a university institutional-wide problem, and we wanted an institutional remedy that would apply to the entire institution. There would be no harm, I suppose, in suing those other individuals as well. But it wouldn't have obviated the need for an appeal to this court, because we expect the attorney general would have made the same sovereign immunity objections and then taken this interlocutory appeal. The problem with this appeal, it's too soon. They're appealing the denial of a facial 12B1 motion before we've had an opportunity to take discovery on the role of the board members, and they've done it in a situation where we have a very light burden under the rules of notice pleading. All we have to do in our complaint is provide enough allegations to put the defendants on notice of what our theory of standing is, and we don't need to say a word in our complaint about sovereign immunity. You asked for discovery at the 12B1 stage? Your point is at the hearing, the briefing was suggestive of a legal theory that the district judge sort of transformed it into a fact proceeding. Yes. I'm not saying you forfeited, but did you at that point ask the district judge? No, we didn't. And the reason, Judge Ho, is because we didn't interpret the district court's actions as converting this facial 12B1 motion into a factual 12B1 motion, because the attorney general never tried to make that argument. And we certainly didn't want to concede that point, because that... They forfeited the argument. Yeah, that's right. I mean, that would have put the burden on us at the evidentiary hearing to prove subject-matter jurisdiction. We weren't ready to do that without discovery. So once we get to this point when we have taken discovery, we will have to prove some connection between the defendants that we've sued and the injury. We're not denying our obligation to do that. What we're saying is that that obligation has not yet attached, because all we did was file our initial complaint. It is weird, though, this strange procedural history that the district court seems to have, at times, in its opinion, talked about things that it learned in the hearing. And, you know, I don't know that there's this clear wall between the information on your clients and the information about the journal's viability and his role in it. I don't think the district court set that up and the district court just fluidly talks about things in the real factual record. I want to be as charitable to the district court as I can, and I think the district court was conscientiously trying to assure itself of subject-matter jurisdiction, which is something every federal judge must do. Subject-matter jurisdiction comes first, and he was confronted with a motion to dismiss under 12b-1, and he had some doubts in his mind about the actual existence of facts and wanted to hold an evidentiary hearing to resolve one of them. But I think what's important for this appeal, Judge Elrod, is he did not hold a factual evidentiary hearing on the issue of the sum connection test under Ex parte Young. He never held a hearing on whether there was factual evidence that we needed to produce to show some connection between the members of the Board of Regents and the injury that Professor Jackson was alleging. And I think he was right not to do that, because, again, the attorney general filed a facial 12b-1 motion, and in that situation, all the court really should look at are the allegations of our complaint. So the district court did do something somewhat unusual, because it almost seems that a little piece of this 12b-1 proceeding became factual rather than facial. Right, and the way the opinion's written, it starts at the evidentiary hearing and then lays it all out and then uses some facts from that hearing in the analysis. Yes, so he doesn't keep a clean distinction between those two types of motions. But I think it's important for this court to do so, and what really is controlling Judge Elrod is not what the district court said, but what the attorney general asked for in the district court. And I think if the court is to review the 12b-1 motions that were filed, not only the opening brief, but the reply brief as well, it's clear as day that the attorney general was launching a facial 12b-1 attack, challenging only the sufficiency of our pleadings, and I think the solicitor general's brief in this court is very much in the same vein. Throughout the brief, the solicitor general's grievance is that we didn't adequately plead some connection, we didn't adequately explain or allege how there was some connection under Ex parte Young between the members of the Board of Regents and the injury alleged, and our answer to that is we simply don't have to do that. See Gomez v. Toledo. Sovereign immunity is an affirmative defense. There's a simple syllogism to apply. The major premise is complaints do not need to plead around affirmative defenses. The minor premise, sovereign immunity is an affirmative defense. The conclusion, there's nothing wrong with our complaint on the sovereign immunity issue, unless the solicitor general is prepared to stand up on rebuttal and deny either the major premise or the minor premise of that argument, and I don't see how that can be done consistent with binding precedent. There is no basis for this court to reverse on sovereign immunity grounds. Now again, Article III standing, different analysis, because we do acknowledge we have to plead Article III standing, but we did more than enough to meet the requirements of Article III, under the very generous regime of notice pleading that continues to apply in federal court even after Twombly and Iqbal. I'm happy to answer any other questions the court may have. And we're not to the stage of the case where it matters whether there is some sort of property interest in the journal and that sort of thing? Not quite yet, and we're really relying on the First Amendment, so I don't think we need to show a property interest at all. There's not going to be that. No, not at all. He's been deprived of that as part of his tenured faculty member property package. We were more concerned about that, and I think there were questions during the initial discussion about the university's treatment of Professor Jackson has certainly gotten better since we filed our lawsuit, and I think that is somewhat to be expected. But we had some very real fears at the outset that he might be stripped of his position as a distinguished university professor. The university responded by reaffirming that. You're saying exogenous factors can affect university behavior. I imagine that's the case, and it certainly doesn't moot our case, Judge Ho, because, again, Professor Jackson is still being barred from working on his journal as a de facto matter. We can quibble over just how bad the exclusion is, but all we need for injury in fact is an identifiable trifle, and we have more than met that standard when the journal hasn't been published for more than a year, and even the university officials acknowledged in the district court that the journal was on pause or, as some said, on ice. So there's clearly injury in fact. The traceability is shown at least under the regime of no displeading. We have enough in our complaint to meet that standard, and all the rest of these issues will be litigated later. It's just too premature right now on an interlocutory appeal from a facial 12B1 motion to throw us out of court on sovereign immunity grounds, which is an affirmative defense, or to throw us out of court on Article III standing when all we need at this stage are allegations that meet the rules of no displeading. Why aren't all the Board of Regents sued? We sued, I believe, the ones that existed at the time, and there have been changes in membership, too, so we'll have to update the caption. I think that's done automatically, but if I need to file a motion to update the caption, I will. It does not automatically get updated in Board of Regents. It may in the Attorney General of the United States automatically get updated, but not in the Board of Regents of particular state systems or other universities. I learned early on from my time practicing in the Fifth Circuit that you should never, ever even try to alter the caption in the slightest, including punctuation, so I did not want to have the temerity on my own initiative to change the caption, but maybe we'll file a motion with the court afterward to update it accordingly. You had said if you are successful and the case is remanded, that you're going to make some amendments in response to a question that Judge Ho had. Is part of the amendment going to be about what the scope of the relief is in the case, or do you believe that it's clear that it's just about the journal and it's going to stay about the journal? We're going to plead a catch-all request for all relief that the court deems equitable, just, and proper, and I don't mean to weasel out of Your Honor's question, but we always want to be careful in pleading a request for relief that we cover all of our bases, and I expect the ultimate remedy that we will seek will be something that may evolve over the course of litigation as we get into discovery. How the remedy ultimately will be crafted, again, it's not something the court really should be resolving at this phase of litigation. It's a confusing part about whether it involved his status or whether it only... That was a previous question to you. Yeah, and we're certainly not going to seek retrospective relief. We know that we can't do that under Edelman against Jordan and ex parte Young. Any relief that we request will be prospective. Maybe to be extra safe, I'll make sure in that catch-all phrase that the complaint will say all other prospective relief that the court deems equitable, proper, and just, just to make sure we don't have to have quibbles over this again when we come back to this court a second time. It's good when good lawyers can work through things that are minor quibbles and save their litigation for actual disputes that the parties have that are of some significance. I hope so the next time we're here in the court on that issue. Good. Well, thank you very much. Thank you, Your Honors. We have your argument. You've saved time for a medal, Ms. Pettit. I'm sorry, I should have asked you if you had anything else. Thank you, Judge Elrod. What my opposing counsel has called minor quibbles are in themselves elements of ex parte Young to ensure that the federal courts do not improperly stick their nose, as a somewhat heightened term for it, but get involved in issues of state governance where it is not justified by the Supremacy Clause. And so I respectfully disagree that it's quibbling. So starting with his major premise that this, or what he also described as a minor premise, that there is no... not required to plead around sovereign immunity. Respectfully, this Court has decided sovereign immunity on motions to dismiss, just like this one, more times than I can count in the last three years. Terra, City of Austin, Haverkamp, they were all what he would describe as a facial challenge to the motion to dismiss. And even he acknowledged that as long as it's obvious from the face of the complaint, was, I believe, what his term was, that the Court can resolve it. This case is at least as obvious as Haverkamp, where there was a suit asking for an order requiring a specific medical treatment that was brought against the head of TBCJ's medical department. It's at least as obvious as City of Austin, where there was a pre-enforcement challenge to the Attorney General on the basis that the Attorney General had sued City of Austin at that point like five or six times in the last two years. If those cases were obvious, so is this one. Now, to get to your question, Judge Elrod, about why there was some mixing of a factual versus a facial complaint, part of that is a result of the plaintiff's own litigation choices. As far as I can tell, the first time any actual connection at all was made to the Board was on page 530 of the record, where Professor Jackson entered a second affidavit saying that the university issues about which he complained were done through the Board. So the reason we have this dispute and why factual versus facial is not that helpful here is because the only way we get to any sort of connection to the actual named defendants are through a factual document the plaintiff submitted. And going to the question of whether there was any sort of facts about who actually did this, Dean Richmond got up on the stand at the evidentiary hearing and said this was a decision by the Provost. That was page 996. Now, they say they don't get discovery, but he could have cross-examined that and asked, well, did you talk to the Board about it? They didn't. The only evidence, again, from Dean Richmond that I believe was elicited by the Attorney General's office... The state's motion. So it was a 12... Based on a facial legal theory rather than the absence of fact. So it was based on the absence of factual allegations. So it's 12b-1 and 12b-6. And at that point... Okay, well, that then returns to our point about our discussion, which I don't think you quibbled with, but let's just go ahead and deal with it. Sovereign immunity is a defense? Sovereign immunity is an affirmative defense with jurisdictional implications, and this Court has held that once it has been raised, the plaintiffs need to establish that there's a way around it. But if it's on the defense to raise... Yes, Your Honor. ...and the defense raised it on a purely legal ground... Yes, Your Honor. Then it would... The plaintiff might not necessarily have to come back and say, here are facts that show that the immunity is waived or there's a route around it, but where we have raised a legal argument, there is no connection here based on the Board's role or there is not a proper remedy asked for based on the Board's role. Then the plaintiff can come back and say, no, here are the statutes in question that gives the necessary connection. That's what the plaintiff at least attempted to do in the city of Austin. Or they can add factual evidence, which he did. He brought in this affidavit saying, no, they acted through the Board. And once that becomes the issue, then under cases like Montez against the Department of the Navy and Mitchell against Bailey, the district court then looks at the allegations and the facts that are in the record and the evidence that's been offered to determine whether there is jurisdiction. So to your point, once you filed your 12b-1, no matter what you call it, legal, factual, whatever, that act placed the burden on plaintiffs to show off their facts. So at the very least, when we point out the absence of specific factual allegations in the complaint, the burden is at that point either to show why the factual allegations in the complaint do in fact establish jurisdiction because there is something else out there that meets this sort of burden, which is what really was going on here. We're not saying you need to show the Board was involved. We need you to allege from which we can infer. Your point is this is like MSJ. Once you've moved, then the other side has to present their facts or else lose the motion. What typically happens is there will be an amendment to the complaint to explain what the connection is. And that was what is absent here. They basically just said because the Board has this overarching role, we don't have to do anything else. And that's inconsistent with what this Court has said in response to motions just like this one. I'm out of time. We request that you... How is that consistent with the idea, though, that sometimes the Board is a proper defendant based upon the facts that come out? So the facts as alleged under, like, pointing back to the S.O. and K.E. cases that I mentioned during my opening presentation, there there are regs and there are regents' rules that show that they are the correct defendant. And you can point out that here is stuff that the Board did. Otherwise, there are... In Judge Ho's hypothetical during my opening presentation, if the Board had issued a statement that says that we endorse what happened here, then there might be a connection. But if there's no statute and no visible connection and the dean of the relevant college is saying, no, no, no, this was the Provost's decision, then at that point, there is an obligation that hasn't been met. But let's... If there's a world in which the Board had the power to get involved but there was absolutely no action taken, so it's an omission-style case, I take it your view is that they are not the proper defendants. What's your best case? Power alone being not enough. Haverkamp. So in that case, the TDCJ medical director as well as the Board that sets TDCJ medical policy, both of which were alleged to have the power to go in and intervene, then this is just as an ex parte young question, that was felt not to be enough because they can't be expected, in the instance of the TDCJ medical director, I think the best on-point analysis, can't be expected to individually decide 120,000 inmates worth of health care, and the Board's position was because they set policy, they don't actually have the power to go in and intervene, so there's a difference between the two under this court's case law. In terms of standing, my best case is probably the Dave's en banc decision, where the question was, the felony judges could go back and review the magistrate judge's decisions on bail, but they didn't have to, and so as a result the actual injury was caused by an independent third party, not before the court. Again, here, that's the provost, and so under either doctrine, they've sued the defendants. Thank you.